25 C.C.P.A. (Patents)

## In re KARPLUS.

### Patent Appeal No. 3990.

Court of Customs and Patent Appeals.

June 6, 1938.

Francis B. Leech, of Washington, D. C. (Paul R. Ames, of New York City, Thomas H. Byron, of Elizabethton, Tenn., Albin F. Knight, of Asheville, N. C., and Richard K. Stevens, of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the examiner denying the patentability of two claims, numbered, respectively, 85 and 86, of appellant's application for a patent relating to artificial silk. A number of claims both for method and product stand allowed. The appealed claims are process claims. They read:

"85. A process for the production of an artificial silk filament having a dull lustre resembling that of natural silk, which consists in adding in a fine state of suspension to a solution for forming the artificial silk, one or more substances which provide light interference and which are insoluble in this solution, and spinning said solution into a setting bath, whereby the resulting filaments acquire a dull lustre.

"86. In the preparation of artificial silk, the step of preparing a highly dispersed suspension of delustering materials, thoroughly mixing such suspension with

the spinning solution and spinning the artificial silk."

The references cited are:

Marchand, 956,390, April 26, 1910.

Singmaster, 1,725,742, August 20, 1929.

In the brief for appellant there appears the following:

"The claims on appeal are directed to a procedure whereby the uniform and high dispersion of the finely divided delustering material throughout the cellulosic solution may be satisfactorily accomplished, and without excessive agitation of the cellulosic solution. This is done by first preparing *a highly dispersed suspension* of the delustering materials (i. e., a suspension in which the particles are widely separated from each other, relative to their size), then *thoroughly mixing this highly dispersed suspension with the main portion of the cellulosic spinning solution* and spinning the artificial silk."

The patent to Singmaster is entitled "Artificial-Silk Filament and Method of Making Same." It appears that at one time this patent was involved in an interference with appellant, claims 4 and 5 of the patent constituting the counts. The claims here on appeal do not seem to have been mentioned in the interference, but it was held by the examiner that they "are rejected as no invention over the Singmaster patent with which applicant was in interference * * *."

In denying a petition for rehearing, the board said:

"In regard to Singmaster, it appears from the examiner's action of June 13, 1936, that the rejection is not on the ground of Singmaster being a mere reference but because of the interference record. It is not obvious that Singmaster's disclosure would not have supported such claims as 85 and 86, hence they might have been proposed for interference purposes."

The patent to Marchand discloses a process in which a paint containing powdered aluminum is made by mixing all the ingredients except the aluminum, this being added after being mixed in oil or turpentine. This patent was not referred to until the second decision of the board where it was given as an example of the conception of first making a suspension of finely divided material and thereafter adding it to a solution. It was held that "such broad conception involves no patentable distinction over conventional methods of mixing paints where pigments are first mixed or suspended in one liquid and then the mixture added to the main body of oil to constitute paint."

With respect to the Singmaster patent, it is urged by appellant that it does not disclose the procedure defined in the appealed claims; that it was a patent at the time of the interference so that the appealed claims, "directed to a *different* invention from that claimed in that patent, could not have been proposed for the purpose of an interference," and that the filing date of the Singmaster patent was subsequent to the effective filing date of appellant's application.

As to the practice in the paint art, illustrated by the patent to Marchand, appellant argues, first, that such practice is different from the procedure followed in the appealed claims, and, second, that the respective arts are not analogous.

It should be understood that the basis of the use of the Singmaster patent, as pointed out by the Solicitor for the Patent Office (also pointed out, in effect, by the board), "is not its date, but the fact that appellant was involved in interference proceedings with it."

It may be conceded that there are limitations in the appealed claims which are not disclosed in the Singmaster patent, but the question is whether such limitations constitute patentable matter over that which the patent does disclose. The rule was stated by us in the case of In re Cole, 82 F.2d 405, 409, 23 C.C.P.A., Patents, 1057, 1063 (a number of authorities being cited), as follows:

"We therefore hold, in harmony with our decisions hereinbefore cited, that in order to warrant the allowance of the claims before us the claims must be inventively different from said interference counts; or, in other words, the specific details or limitations in the claims before us not found in said interference counts must, when combined with the structure embraced in said counts, involve invention over said counts."

Claim 4 of the Singmaster patent, which was one of the counts of the interference, reads:

"4. An artificial silk filament having its opacity and covering power increased by having submerged in and widely distributed throughout its mass a small per-

centage of small particles of pigment-like inorganic material the quantity and distribution of the particles being such as not to materially impair the continuity of the mass of the filament."

The foregoing is a product claim, it is true, while the appealed claims are method claims, but Singmaster also has method claims (just as appellant here has been allowed both method and product claims), and claim 4, supra, seems obviously to be a product produced by the method defined in claim 1 of the patent. It is not questioned that, as stated by the examiner, Singmaster—

"* * * discloses the idea of adding pigment-like, materials to a spinning solution prior to extruding it to form filaments and also discloses that an oil may be added to aid in the distribution of the pigment in the solution."

The appealed claims provide for adding to the spinning solution one or more solid substances in suspension. The examiner said:

"The point of novelty of these * * * claims is that the solid substance is distributed in the solution by first preparing a suspension of the solid substance and adding the suspension to the solution."

With respect to this, the examiner subsequently held (a holding in which the board concurred):

"To mix the oil and pigment prior to adding to the solution involves no invention. This process of pigmenting solutions has been practiced from time immemorial in such processes as used in mixing paints," etc.

It is insisted on behalf of appellant that Singmaster's process is "merely the practice of adding *directly to the spinning solution* an agent to assist in distributing the inorganic particles" and that the patent contains no suggestion, such as that embodied in the appealed claims, of preparing a highly dispersed suspension of delustering materials, thoroughly mixing such suspension with the spinning solution, or adding the material in a fine state of suspension. Hence, it is said that the claims do not read on the Singmaster disclosure and could not have been made counts in the interference.

Granting the foregoing to be a correct statement, the question still remains whether the limitations in the claims not reading on the patent disclosure are patentable limitations—that is, whether they render the claims patentably distinct.

We are not convinced that the step of first preparing the solid substance in suspension and then adding it to the spinning solution constitutes novelty. No chemical question is involved here, and we are unable to attribute patentability to the physical steps, as defined in the claims, over the method of mixing all the ingredients at once.

It may be remarked that appellant's specification itself teaches that the same result obtained by the method defined in the claims may also be obtained by mixing all the ingredients at once, and examples are given of such a mode of procedure.

In the view which we take of this case, we need not discuss the issue of non-analogous art raised with respect to the Marchand patent. The limitations in the claims do not present matter patentably distinguishable from the Singmaster patent, and the rule followed in the case of In re Cole, supra, is applicable here.

The decision of the Board of Appeals is affirmed.

Affirmed.